## Pardee *versus* Markle.

1. A., B. and C. were partners in the banking business. C. was the managing partner. B. having some reason to suspect that C. was acting unfairly toward himself and A., refused to continue the business unless he was indemnified against any loss that might be sustained by reason of C.'s conduct. A. thereupon agreed to become responsible to B. for the acts and omissions of C., and executed and delivered a bond to B. to so indemnify him.

2. It was afterward discovered that C. had, both before and after the delivery of the bond, drawn from the correspondents of the firm, and appropriated to his own use, large sums of money. These sums C. afterward partially repaid, by making payments to said correspondents, without designating or making appropriation as to which overdrafts, those before or those after the bond of indemnity, the payments should be applied.

   *Held*, (*a*) That while the exercise of the utmost good faith is expected between partners, the failure on part of B. under the circumstances to communicate to A. the fact of a discrepancy on part of C. known to him, was no defence to an action on the bond of A. (*b*) That the payments on the overdrafts by C. must be appropriated to the earliest first, and so on in order. (*c*) A. could not have these payments applied to the overdrafts, since his bond of indemnity leaving those overdrafts before his said bond unpaid. (*d*) That it was of no legal consequence that A. and B. were partners.

3. Where there are items of debt and credit in a running account, and the intention of the debtor at the time of making the payments to specifically apply them, is not shown either by words, acts or circumstances, they will be appropriated to the discharge of the items first due in the order of the account.

January 18th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas, No. 2, of *Philadelphia county :* Of January Term, 1885.

This was an action of covenant brought by George B. Markle, plaintiff below, against Ario Pardee, defendant below.

The *narr* alleged that said Pardee had on January 25th, 1881, covenanted and agreed with said Markle to pay to said Markle all the liabilities of one Grier, arising out of a partnership then existing between said Pardee, Markle & Grier, by reason of any act done or omitted by said Grier between January 1st, 1881, and April 1st, 1881, and also that Grier had overdrawn from the moneys of the firm in this time a large sum of money, and applied the same to his own use.

The pleas were :

I. Covenants performed.

II. Covenants performed with leave, etc.

III. Covenants performed *absque hoc.*

And a special plea admitting the execution of the covenants, and that Grier had applied to his own use the sum of twenty-four thousand nine hundred and twenty-four ($24,924) dollars between January 1st, 1881, and April 1st, 1881, but alleging that he had repaid to the firm the sum of twenty-one thousand ($21,000) dollars, and that plaintiff should only recover one half of the difference between these two sums, as plaintiff and defendant were members of the firm of Pardee, Markle & Grier with equal interests.

The replication took issue on this fourth plea.

The cause came on to be tried on November 19th, 1884.

At the trial defendant filed an additional special plea, alleging that Markle at the time the covenant of January 25th, 1881, was executed, was advised of certain overdrafts of Grier prior to January 1st, 1881, and concealed the same from Pardee, which said concealment was a fraud on Pardee.

Also, plea of "*Non est factum.*"

Before the trial plaintiff below received from defendant below the amount admitted by defendant to be due, as if the same had been paid into court. Defendant at the same time paid the costs to date, namely, November 17th, 1884.

The facts as they appeared on the trial before MITCHELL, J., are sufficiently set forth in the opinion of the Supreme Court.

The defendant made the following offer, *inter alia:*

Mr. Gilpin: I offer in connection with the testimony of Mr. Eby, which has been already heard to prove by this witness, Ario Pardee, that at the time he executed this covenant of January 25th, 1881, he did not know anything of these overdrafts or irregularities on the part of Grier, and offer to show by this witness in connection with the testimony which has already been taken of Mr. Eby, that Mr. Pardee was unrepresented in the settlement, that Mr. Markle was represented by counsel, and that Mr. Markle did not inform Mr. A. Pardee, or tell him of these facts, which were in his information and possession at that time, January 25th, 1881.

Offer overruled, as there is no evidence of knowledge on part of plaintiff, Markle, of any overdrafts or irregularities on the part of Grier at the time the agreement sued on was made.

Exception for defendant. (Fourth assignment of error.)

The defendant requested the court to charge *inter alia:*

That Grier had the right, at the time he made the deposits with the bank and bankers, to appropriate the deposits so made with them to the payment of the liability incurred by the overdrafts between January 1st, 1881, and April 1st, 1881,

for which Pardee was liable under the covenant with Markle, dated January 25th, 1881.

Refused. (Seventh assignment of error.)

. That having such right and having such intention, the deposits being to the credit of the firm of Pardee & Markle, said firm being· the successors of the firm of Pardee, Markle, & Grier, there was in law an exercise of that right of appropriation by Grier binding on all parties, and the interests of Pardee & Markle in said firms being equal, the plaintiff can only recover a verdict for one half of the difference between the amount of the overdrafts made between January 1st, 1881, and April 1st, 1881, and the amount deposited by Grier with the bank and bankers, with interest to date, to wit, the sum of two thousand seven hundred and sixteen dollars and ninety-eight cents ($2,716$\frac{98}{100}$).

. Refused. (Eighth assignment of error.)

The following was the general charge of the court:

There is no sufficient evidence in support· of the plea of fraudulent concealment by the plaintiff of facts that he should have communicated to defendant, and on the other pleadings the facts are undisputed. I therefore instruct you as matter of law to find a verdict for the plaintiff. The defendant excepted to this and the refusal of his points. (Fifth assignment of error.)

. Verdict for plaintiff for $13,233.23. The defendant filed a remittitur for $681.99. Judgment was accordingly entered. The defendant thereupon took this writ, assigning for error the overruling of his offer of evidence, the refusal of his points, and the general charge of the court.

*Hood Gilpin* (*Bernard Gilpin* and *Charles Gilpin* with him), for plaintiff in error.—The evidence should have been submitted to the jury for them to say:

I. Whether or not, under all the facts and circumstances of the case, there was any appropriation of the payments made either by Grier, the debtor, or Pardee or Markle, the creditors, to the overdrafts made by Grier during the period for which Pardee was Grier's surety, namely, between January 1st, 1881, and April 1st, 1881.

. This Court, in the case of Allegheny Valley Railroad *v.* Houston, 27 Pitts. L. J., 82, said that "the question of the application of payments on account is for the jury under the evidence."

II. Whether or not the moneys repaid were the identical moneys withdrawn from the firm of Pardee, Markle & Grier between January 1st, 1881, and April 1st, 1881: Speck *v.* Commonwealth, 3 W. & S., 324.

[Pardee v. Markle.]

In order to avoid an agreement, as between partners, it is only necessary to show that one partner has knowledge of the existence of facts which might affect the agreement, of which facts the other partner has no knowledge, and that the partner having such knowledge fails to communicate it to his co-partner.

In refusing to admit the testimony of Pardee, by whom it was offered to prove, in connection with that of Eby, that he did not know of these irregularities when the covenant was executed, and that Markle did not tell him of the facts in his information as to the irregularities in the account, the learned Judge in the Court below said (see fourth assignment of error), "there was no evidence of knowledge on the part of plaintiff (Markle) of any overdrafts or irregularities on the part of Grier at the time the agreement sued on was made." It is respectfully submitted that, in view of the testimony of Eby, the learned Judge erred in refusing to admit the testimony of Pardee on the ground above stated.

The question of the intention of the debtor regarding application of payments is for the jury, and they may infer it from the circumstances of the case: Moorehead v. Bank, 3 W. & S., 550; Bank v. Moorehead, 5 W. & S., 542.

Where appropriation of payments is not made at the time of payment, the appropriation must be determined by rules and circumstances of equity: Harker v. Conrad, 12 S. & R., 301; Johnson's Appeal, 1 Wr., 274; Souder v. Schechterly, 91 Pa. St. R., 87.

It is respectfully submitted that there is neither justice nor equity in applying payments to the benefit of one of two creditors and to the detriment of the other. Pardee has his right as a creditor equal to that of Markle, and his position as surety cannot take it from him.

The case of Speck v. Commonwealth, 3 Watts & Serg., 324, which was cited and relied on by plaintiff below, has been overruled by the decision in the case of Commonwealth v. Reitzel, 9 Watts & Serg., 109, Judge Kennedy delivering the opinion of the Court in each case.

As to the appropriation of payments where a surety is concerned, see Burnell's Estate, 9 W. N. C., 334; Weightman's Appeal, 10 W. N. C., 155.

R. C. McMurtrie, for defendant in error.—The rule for the application of payment is well settled in this State.

The debtor, when he pays, may apply as he pleases. He did not apply, but paid generally. The right to apply does not mean that his secret uncommunicated intention is an application. It means an outward and visible or audible expression of that intention.

Then, if the debtor does not make any particular application, the creditor may elect to which items to apply it.

Could one partner, against the will of the other, insist on the payment being made to release himself?

There is no authority for that; but is it not sufficient that he did not and does not assert that he was ignorant as to the mode adopted by the firm of entering the payment?

That a surety cannot require the application to be to the last debt, because he is the surety, was decided in Specht *v.* the Com'th, 3 W. & S., 324. And all that is meant in Pierce *v.* Sweet, 9 Casey, 157, is that the existence of a surety prevents the law, if it has to make the application, from inverting the effect and applying it to the last debt in order to leave the surety liable on the early items. In other words a surety is not that kind of security that the law will change the natural effect of payment in order to leave him liable. This is admitted in Blackstone *v.* Hill, one of the cases cited in the judgment in 9 Casey, the court admitted that a voluntary payment could be applied as the creditor pleases to the injury of the surety. 10 Pick., 133.

That the creditor is not bound to apply the payment in relief of a surety is decided in Mayer *v.* Patton, 4 Cranch, 317; and the case concedes that even where he fails to make the appropriation at the time of receiving, there is no rule that the law does so apply it. And in the notes to this case in 2 Am. Leading Cases, 273*, this is stated as the rule and numerous authorities cited—that there is no equity in the surety to have the money applied to the debt for which he is responsible. And at page 284* the rule is stated that even the law, when called on to act, selects debts not secured by a surety, on the principle of making the application in the manner most beneficial to the creditor. This shows pretty clearly that what was meant by Judge Strong in Pierce *v.* Sweet was what I have stated to be his meaning. See to same effect a note to the same book, page 286.

Mr. Justice CLARK delivered the opinion of the court, February 15th, 1886.

In the year 1867, Ario Pardee, George B. Markle and W. A. M.. Grier, were associated as partners in the banking business, under the name of Pardee, Markle & Grier; of which firm Grier was the managing partner. In 1880, Markle having some reason to suspect that Grier was acting unfairly towards himself and Pardee, in the management of their partnership affairs, refused to continue the business after the 31st December of that year, unless he was indemnified against any loss that might be sustained after that date, by reason of the con-

duct of Grier. Pardee thereupon agreed to become responsible to Markle, for the acts and omissions of Grier in the conduct of the business from 1st January, 1881, until 1st April, 1881, and executed and delivered to Markle the contract of indemnity, which is the subject of this suit. On the 1st April, 1881, Pardee, Markle & Grier dissolved, Grier retiring from the firm, and thereafter the business was conducted by Pardee & Markle.

In August, 1881, upon settlement with Barker Brothers & Co., of Philadelphia, and the First National Bank of New York, who had been correspondents of Pardee, Markle & Grier, it was discovered that Grier had drawn and applied to his own use, moneys of Pardee, Markle & Grier, as follows: From Barker Brothers & Co., $28,730.67; of this $15,385.67 had been appropriated prior to 1st January, 1881, and the balance, $13,345, after that date, and before 1st April, 1881; from the First National Bank of New York, $18,505; $6,926 prior to 1st January, 1881, and the balance, $11,579, after that date, and before 1st April, 1881. The total amount, therefore, drawn by Grier prior to January, 1881, was $22,311.67, and the amount afterwards drawn, during the period for which Pardee was responsible under his covenant of indemnity, was $24,924. In partial repayment of these overdrafts, Grier, on 30th June, 1881, deposited to the credit of Pardee & Markle with Barker Brothers & Co., $13,000, and on 4th August, 1881, with the First National Bank of New York, $8,000.

The verdict, under the instruction of the court below, was in favor of the plaintiff for $13,233.23, the full amount of one half of the overdrafts, between 1st January, 1881, and 1st April, 1881, with interest; a remittitur was afterwards filed as to $681.99, the amount paid pending the suit, and judgment was entered for $12,551.24.

At the trial of the cause, Pardee, by way of defence, alleged that the execution of the covenant of indemnity had been induced by the fraud of Markle; that Markle was at the time, to some extent, aware of Griers misconduct in the affairs of the firm, and that he had failed to inform Pardee of the fact, as in good faith he was bound to do, and that the covenant was thereby altogether avoided. In support of this, the defendant's counsel offered to prove by Pardee that he had no knowledge or suspicion of Grier's conduct in the affairs of the firm; that Markle gave him no information concerning it; that if he had known or suspected it, he would not have made the covenant to indemnify Pardee. This, it was contended, was admissible, because it already appeared by the evidence of A. M. Eby, a clerk in the banking house of Pardee, Markle & Grier, that Markle at the time did suspect Grier, and knew of

some alleged "irregularity," or "discrepancy" in the account of one of their New York correspondents. The exercise of the utmost good faith is certainly expected between partners in their dealings with each other, and if it had been shown that Markle fraudulently concealed facts, which in good faith he should have communicated to Pardee, the offer might have been received, but there was no such evidence. It is very clear that Markle regarded Grier with suspicion; but of this Pardee could not have been ignorant, for it was upon this ground, admittedly, that Markle expressed his unwillingness without indemnity to continue the business. There is some evidence that, in November, 1880, there was an alleged discrepancy in the account of one of the New York correspondents, of which Eby informed Markle, but it was spoken of as a mere "discrepancy," which had not been investigated or explained, and if Eby himself had any suspicion of the transaction being of an irregular and fraudulent character, he did not communicate his suspicion to Markle. The admitted fact, however, that Markle declined, without indemnity from Pardee, to continue the business under Grier's management, was the plainest possible expression, and the clearest notice of his want of faith in Grier, and that Markle had some real or supposed cause of suspicion concerning him. Markle's instructions to Eby, given prior to his taking voyage to Europe to look after his interests, and regulating his conduct with the cashier and Grier, were given in the presence of Pardee; there is an entire absence of proof of any effort or intention to conceal anything. The assignments of error, so far as they relate to the exclusion of this evidence, are, we think, without merit.

The defendant's further contention is, that the deposit of $13,000 with Barker Brothers & Co., 30th June; 1881, and of $8,000 with the First National Bank of New York, 4th August, 1881, already referred to, were applicable, in his relief as a surety, to the overdrafts, made after the 1st January, 1881.

It cannot be doubted, that as the payments by Grier were voluntarily made, he had a right, at the time, to fix the terms upon which they should be accepted, and a subsequent acceptance would necessarily have been subject to the conditions, he might then have appointed. He had a clear right, in the first instance, to apply these payments as he pleased, but he does not appear to have exercised or to have attempted to exercise that right. He may have intended to pay the overdrafts for which Pardee was responsible, but if he did, he should have signified that intention at the time, either to the creditors or to the banks, through the medium of which the respective payments were made. The intention of a debtor in such a case, may be manifested by express direction, or it

may be evidenced by circumstances or acts which will demonstrate the fact as plainly as words. Here, however, nothing whatever was either said or done, and no circumstances are shown, from which an intention to apply the payments specially can be inferred.

Nor was there anything shown, as to the source or fund from which the payments came, which would connect or identify them, or either of them, with any specific or particular item of the debt, so as thus to determine and direct their appropriation upon the principle that where money has come from a particular fund, it must be applied by the creditor in relief of the source from which the fund arose. As therefore there was no actual appropriation by Grier, the debtor, either expressly declared or to be inferred from the circumstances, and as the considerations which ordinarily control the direction of the creditor are entirely wanting, it belonged to Pardee & Markle, under some restrictions, to apply the payments in their own interest. It is plain, however, that whatever they, or either of them, may have intended, no actual specific appropriation was by them at any time made, and the right being thus lost to both parties, it passes to the law, which will apply the payments, according to the intrinsic justice and equity of the case.

Certain established rules of law, however, have been found by experience to lead to equitable results. One of these is, "that where there are items of debt and credit in a running account, in the absence of specific appropriation, the credits will ordinarily be applied to the discharge of the items antecedently due, in the order of the account: " Greenleaf's Ev., 534; or, as stated in Souder *v.* Schechterly, 91 Pa. St., 83, "each item of payment or credit is applied in extinguishment of the earliest items in the account, until the whole payment or credit is exhausted." The rule, it is true, is subject to certain exceptions, but the case in hand is not brought within any of them. So, " where a general payment is made without application, by either party, and there are divers claims, some of which are but imperfectly and partially secured, the court will apply it to those debts for which the security is most precarious: " Greenleaf, 534; Reed *v.* Ward, 22 Pa. St., 144; Hollister *v.* Davis, 54 Id., 508; Johnson's Appeal, 37 Id., 274.

In the application of these rules of law, the cases which have been adjudicated in this court are, in some respects perhaps, inconsistent with the cases elsewhere, but they are in no sense inconsistent with each other. The latter rule under our decisions, as between the debtor and creditor only, will ordinarily prevail over the former, whenever the interest of the creditor requires that it should : Pierce *v.* Sweet, 9 Casey,

151; but not to the prejudice of a surety, who may insist upon an appropriation under the rule first stated; and hold himself bound or discharged accordingly: Berghaus *v.* Alter, 9 Watts, 386.

Thus in Pierce *v.* Sweet, *supra*, it was held, that where a payment is made, in the absence of any appropriation of it by the parties, the law will, in general, apply it in discharge of the earliest liabilities of a running account, but if by so doing the creditor may lose a portion of his account unsecured by lien, the money will be first applied to the account thus unsecured, for his interest, "unless," says the court, "such an appropriation would be to the prejudice of a surety." So in Berghaus *v.* Alter, *supra;* B. having purchased of A. at different times, several bills of goods at six months credit, gave a note at twelve months, with C. as collateral security for payment; several other purchases were afterwards made upon the same terms, during the twelve months, and subsequently B. made payments on account, which were credited generally in the books of A. without any special appropriation; it was held that such payments must be appropriated to the payment of the goods first due, and in relief of C. the surety in the note of B.

Whilst, therefore, a surety cannot require a general payment to be applied to the last debt, in ease of his liability for it, to the exclusion of the earlier items: Specht *v.* Commonwealth, 3 W. & S., 324, he can require that the rule shall not be inverted to his prejudice; that it shall not be turned against him, by applying the payment to the last item, and thus leave him liable on the earlier ones. This, we think, is the outcome of all the cases in this court, and the cases cited by counsel of the plaintiff in error: Postmaster General *v.* Norvell, Gilpin Rep., 106, and Commonwealth *v.* Reitzel, 9 W. & S., 109, are not, as we understand them, in conflict with this view; they were determined on other grounds already intimated in this opinion.

Applying the principles stated to the case in hand, it is clear that if Pardee had been surety for the items of Grier's defalcation, prior to 1st January, 1881, he might justly have complained, if the rule of appropriation had been inverted to his prejudice, by the application of the deposits to the items subsequent to that date; but his obligation only extended to the later items, and the rule of appropriation of payments, to which we have referred, requires that the money shall be applied to the items of the account, in their order.

It is of no legal consequence that the creditors were partners, and that their interests were diverse; the rules of law which we have stated are rules of general application and the

justice and equity of any particular case are more likely to be attained by an adherence to, than a disregard of them. Pardee voluntarily added to his relation of partner that of a surety, and he is bound accordingly. It was in the power of Grier to have applied the money in his relief, if he had chosen so to do; he has not done so, and the law defines the equities of the parties according to the rules stated.

Judgment affirmed.