## Markley v. Allison et al.

*Wayne S. Luce*, of *Reed & Ewing*, for plaintiff.

*Frank E. Reed*, of *Bradshaw, McCreary & Reed*, for defendants.

WILSON, J., May 17, 1943.—On April 26, 1930, the Monongahela Land Company accepted a proposal of S. B. Markley to put in approximately 3,000 feet of sewer at $1 per lineal foot, approximately 2,650 feet of water line at 85 cents per lineal foot, and approximately six manholes at $80 each, with payment of 50 percent upon completion of the work, and the balance January 1, 1931. Payment was guaranteed by Agnes McG. Hice and Dwight M. Allison, who were, respectively, the president and secretary of the land company.

Ascertaining that the trench for the sewer, water, and manholes would have to be deeper, a supplementary contract was entered into between the parties in May 1930, providing for the payment of 15 cents per lineal foot for each additional foot of depth, and $10 for each additional foot of excavation and construction of manholes, payment to be made in the manner and at the times specified in the original contract. Payment for this extra excavating was also guaranteed by Mrs. Hice and Mr. Allison.

From May 5, 1930, to August 4, 1930, extra work was done and material furnished by Markley which was not within the contracts payment of which had been guaranteed by Mrs. Hice and Mr. Allison. The charge for this extra work and material was $874.70, of which $82.50 was admitted to be within the guaranties.

The account of Mr. Markley, as put into evidence by his executrix, appears to have been made up by his bookkeeper, at his dictation, on or about December 31, 1930, and is, in part, as follows:

Contract signed April 26, 1930.

Laying sewer and water lines, per
    contract

| | |
|---|---:|
| 8″ sewer line, 3316 ft. at $1.00 .. | $3,316.00 |
| Extra sewer depth . . . . . . . . . . . | 585.60 |
| 6 Manholes, at $80.00 . . . . . . . . . | 480.00 |
| 4″ Water line, 3427 ft. at 85¢ . . . . | 2,912.95 |
| | $7,294.55 |

Extra Time and Material charges
    at cost, plus

| | | |
|---|---:|---:|
| 15%, except shovel straight $5.50 per hour . . . . . . . . . . . . . . . | | 536.25 |

(This is broken down into hours
from May 5 to August 4,
1930)

| | | |
|---|---:|---:|
| Extra time and material on water line . . . . . . | 214.30 | |
| Plus 15% . . | 32.12 | |
| 2 hrs. shovel @ 5.50 . | 11.00 | 257.45 |

| | | |
|---|---:|---:|
| Extra work on sewer line . . . . . . . . . . . . | 26.09 | |
| Plus 15% . . | 3.91 | |
| Truck hauling sewer & water line . . . | 7.00 | 81.00 |

| | |
|---|---:|
| Total Extra Time & Material and Shovel . . . | 874.70 |
| Total . . | $8,169.25 |

The account showed credits as follows:

| | |
|---|---:|
| July 29, 1930, cash. . . . . . . . . . . . | 500.00 |
| July 31, " " . . . . . . . . . . . | 2,000.00 |
| Jany 20, 1931 " . . . . . . . . . . . | 1,500.00 |

| | | |
|---|---|---|
| Feby 2, 1931............... | | 1,500.00 |
| " 11, " ............... | | 1,000.00 |
| March 2, " ............... | | 300.00 |
| July 23 " ............... | | 400.00 |
| Dec 9, " ............... | | 200.00 |
| Cash—April 13, 1933... | $20.00 | |
| " 28, " ... | 50.00 | |
| Nov. 7, " ... | 20.00 | |
| Mar. 29, 1934... | 15.00 | |
| May 9, " ... | 12.00 | |
| Sept. 1, " ... | 25.00 | 142.00 |
| Cash—May 25, 1935... | 20.00 | |
| July 8, " ... | 20.00 | |
| Mar. 2, 1936... | 20.00 | |
| Oct. 2, 1936... | 20.00 | |
| Apr. 6, 1937... | 50.00 | 130.00 |

The record discloses no application by either the land company or S. B. Markley of the foregoing payments to any particular account, contract or item. The dates of the extra work done and materials furnished, as compared with the dates of the two first payments, totalling $2,500, together with the heading of the account, "Contract Signed April 26, 1930", conclusively establish that the first four items of the account, totaling $7,294.55, were items charged to the contracts payment of which was guaranteed by Dwight M. Allison and Agnes McG. Hice, upon which contracts of guaranty (surety) Emma G. Markley, executrix of Samuel B. Markley, deceased, brought the action in assumpsit now before us.

At the trial counsel for the defendants made a motion for a compulsory nonsuit at the close of the plaintiff's case, and we directed a verdict for the defendants, for the reason that the guaranteed debts were paid.

(As to a directed verdict on a motion for a nonsuit we see no injury to the plaintiff. A new trial can be granted as readily as a nonsuit can be taken off, with no added expense or trouble. The only question was: Were the debts paid? If they were, that should be the end of all controversy. And it was conceded by counsel for both the plaintiff and the defendants that if the $874.70, less $82.50 for the extra work, was excluded from the liability of the guarantors more than $7,294.55, plus $82.50, together with interest, had been paid to Markley by the land company. Nor was there any question of construction of the contracts of suretyship. There were two contracts for specific work and charges, in neither of which could the extra work and material be included by any possible construction or interpretation, and were such possible, it would be negatived by plaintiff's account. We have carefully considered Cancelmo's Estate, 308 Pa. 178, and Brock's Assigned Estate (No. 1), 312 Pa. 7, and find in them no application.)

The question for determination is the application of payments made without specific appropriation by either the debtor or creditor, as between secured or unsecured debts, or items in an account, as governed by the law of Pennsylvania.

As between debtor and creditor, a debtor may make specific application of payment to any debt or item he may designate; if the debtor fails to do this, then the creditor may make specific application of payment to any debt or item he may designate; if both the debtor and creditor fail to make specific application of payment, then the law, under equitable principles, makes application of payment as follows:

(a) To the oldest debt, or oldest or first item in an account, first applying such payment to accrued interest.

(b) To an unsecured or precarious debt.

Both ($a$) and ($b$) are to be applied together, and in such manner as to be to the best interest of the creditor.

As between debtor and creditor, third parties have no rights as to the application of payment, except in certain circumstances of suretyship, as where the very purpose of the creation of the relationship of principal and surety is the insurance of payment to third parties, such as the bond in a construction contract conditioned that the contractor apply payments to him in liquidation of his obligations for labor and material. In such cases payment by the debtor to the creditor (contractor) must be applied first to the relief of the surety. See Columbia Digger Co. v. Sparks et al., 227 Fed. 780. This rule of application of payment first to the relief of a surety has a very limited and special application, and has no relation to the question before us.

Conflict arising in the application of ($a$) and ($b$), as the same may affect the surety of the debtor, has been resolved as follows:

The law will apply payment to the oldest debt or item, and this regardless of whether such payment enures to the relief of a surety. The rule of application of payment to the interest of the creditor in the liquidation of unsecured or precarious debts or items has been set aside, in the interest of the surety, in cases where such surety is for the oldest debt or item. Pardee v. Markle, 111 Pa. 548, holds as follows (p. 555):

"It is plain, however, that whatever they, or either of them, may have intended, no actual specific appropriation was by them at any time made, and the right being thus lost to both parties, it passes to the law, which will apply the payments, according to the intrinsic justice and equity of the case.

"Certain established rules of law, however, have been found by experience to lead to equitable results. One of these is, 'that where there are items of debt and credit in a running account, in the absence of specific appropriation, the credits will ordinarily be applied to the

discharge of the items antecedently due, in the order of the account:' Greenleaf's Ev., 534; or, as stated in Souder v. Schechterly, 91 Pa. St., 83, 'each item of payment or credit is applied in extinguishment of the earliest items in the account, until the whole payment or credit is exhausted.' The rule, it is true, is subject to certain exceptions, but the case in hand is not brought within any of them. So, 'where a general payment is made without application, by either party, and there are divers claims, some of which are but imperfectly and partially secured, the court will apply it to those debts for which the security is most precarious:' Greenleaf, 534; Reed v. Ward, 22 Pa. St., 144; Hollister v. Davis, 54 Id., 508; Johnson's Appeal, 37 Id., 274.

"In the application of these rules of law, the cases which have been adjudicated in this court are, in some respects perhaps, inconsistent with the cases elsewhere, but they are in no sense inconsistent with each other. The latter rule under our decisions, as between the debtor and creditor only, will ordinarily prevail over the former, whenever the interest of the creditor requires that it should: Pierce v. Sweet, 9 Casey, 151; but not to the prejudice of a surety, who may insist upon an appropriation under the rule first stated, and hold himself bound or discharged accordingly: Berghaus v. Alter, 9 Watts, 386.

"Thus in Pierce v. Sweet, *supra*, it was held, that where a payment is made, in the absence of any appropriation of it by the parties, the law will, in general, apply it in discharge of the earliest liabilities of a running account, but if by so doing the creditor may lose a portion of his account unsecured by lien, the money will be first applied to the account thus unsecured, for his interest, 'unless,' says the court, 'such an appropriation would be to the prejudice of a surety.' So in Berghaus v. Alter, *supra;* B having purchased of A at different times, several bills of goods at six months credit, gave a note at twelve months, with C as collateral secu-

rity for payment; several other purchases were afterwards made upon the same terms, during the twelve months, and subsequently B made payments on account, which were credited generally in the books of A without any special appropriation; it was held that such payments must be appropriated to the payment of the goods first due, and in relief of C the surety in the note of B.

"Whilst, therefore, a surety cannot require a general payment to be applied to the last debt, in ease of his liability for it, to the exclusion of the earlier items: Specht v. Commonwealth, 3 W. & S., 324, he can require that the rule shall not be inverted to his prejudice; that it shall not be turned against him, by applying the payment to the last item, and thus leave him liable on the earlier ones. This, we think, is the outcome of all the cases in this court . . ."

In Harker et al. v. Conrad et al., 12 S. & R. 301, Chief Justice Gibson preserved the rights of a third party as to purchaser and mechanic's liens, and intimated that the law should apply payment to the best interest of the debtor.

In Berghaus v. Alter, 9 Watts 386, payment was applied to the oldest debt or item, although secured.

In McKee's Executor v. Commonwealth, 2 Grant 23, the court said (p. 24) :

"Where there are various items of debit on one side, and various items of credit on the other, occurring at different times, and no special appropriation of payments is made by either party, the successive payments or credits are to be applied to the items of debit antecedently due, in the order of *time* in which they stand in the account. 1 Story, Equity, §459, *a*, and authorities there cited. The rule applies equally to cases where a part of the debt is secured by a guaranty, or by sureties; as where there are no such parties. 1 Story, Equity, §459, *g;* 9 Wheaton, 720, 737."

In Pierce et al. v. Sweet, 33 Pa. 151, 157, the court said:

"Another rule of the common law is, that when no application is made by either the debtor or the creditor, the law will apply the payment in the way most beneficial to the creditor, and therefore to the debt which is least secured, unless to the prejudice of a surety."

The foregoing case has been cited and quoted, including the phrase "unless to the prejudice of a surety", many times, as in Garrett's Appeal, 100 Pa. 597, Bell v. Clark, 38 Pa. Superior Ct. 365, and Page v. Wilson, 150 Pa. Superior Ct. 427.

In Spade v. Wetterau, 8 Kulp 344, Judge Lynch of Luzerne County said:

"But the rule of law which, in the absence of appropriation by the parties, appropriates payment in the way most advantageous to the creditor, will not be applied to the prejudice of a surety."

But there has never been any modification of the rule of appropriation to the oldest debt or item, so it is only a surety for the oldest debt or item that is relieved. See Speck v. Commonwealth, 3 W. & S. 324, Hollister v. Davis et al., 54 Pa. 508, Woods v. Sherman et al., 71 Pa. 100, and Arbuckles & Co. v. Chadwick, 146 Pa. 393.

Nor is it certain that this rule applies to cases where the debtor gives security, as by mortgage, judgment, or other collateral, as in Foster v. McGraw, 64 Pa. 464, and Johnson's Appeal, 37 Pa. 268, where payment was applied to junior, or least secured, debts. The peculiar thing in the Foster case is that Chief Justice Agnew cites Johnson's Appeal, and Pierce et al. v. Sweet, supra, and Johnson's Appeal was decided by Mr. Justice Strong on the terms of agreement in the mortgage, and it was Mr. Justice Strong who wrote the opinion in Pierce et al. v. Sweet, supra, where the expression "unless to the prejudice of a surety" first appeared in

our decisions. We may therefore safely assume that when he said in Johnson's Appeal (p. 274) :

"In the present case, it could make no difference to Duncan whether his credits were applied to the earlier or to the later items of the account. He was equally a debtor for both, and both carried interest. It is true, that when payments are made upon a running account, it is one of the principles of legal application that they shall be treated as extinguishing the earliest charges in the account. But this is not a paramount principle. Another of equal force is, that the payments are to be applied to that debt which is least secured. Both these rules look to the interest of the creditor, it being presumed that the debtor, by neglecting to give any direction, consented to such an application as would be most beneficial to the creditor. But to apply Duncan's credits to the first items in the account of the Messrs. Nimick against him, and thus extinguish the mortgage in the first instance, would be an application not beneficial to the debtor, and most hurtful to the creditors. It would be paying first the debt which was best secured, and leaving the later advances without the protection of a factor's lien, and without any security at all, as against judgments entered before they were made. It would be reversing a fundamental rule of legal appropriations";

he intended nothing contrary to the rule in Pierce et al. v. Sweet, which case, together with McKee's Executor v. Commonwealth, supra, and Pardee v. Markle, supra, distinctly discloses the meaning to be attached to "debt least secured, unless to the prejudice of a surety," as used by President Judge Keller in Page v. Wilson, supra.

We are of the opinion that the rule of application of payment to accrued interest does not alter the priority rights of a surety; certainly not on the facts before us. Equity could hardly countenance the inclusion of the $874.70 for extra work and material, not within the

guaranty, and which in fact is disputed, in an interest calculation which would be obviously "to the prejudice of a surety." We have carefully considered section 122, "Payment", in 48 C. J. 663, which is as follows:

"Where two or more debts are kept separate and distinct from each other, the law will apply partial payments to the satisfaction first of the interest, then of the principal of the debt first falling due, and, following that, first the interest, then the principal of each succeeding debt in order. But where there is in reality but one debt represented by different notes maturing at different times, the payment should first be applied to the interest due on the whole debt";
and find that it is in agreement with our conclusion. In fact there were two debts of different dates, and in law the creditor could not form an account to the prejudice of the surety: Pardee v. Markle, supra.

Therefore, applying these rules to the payments by the Monongahela Land Company to the account of S. B. Markley, the debts for which defendants were sureties had been paid, and a new trial will have to be refused.

In passing it is proper to note the difficulties we have encountered in source authorities such as section 394 of the Restatement of the Law of Contracts, and 97 A. L. R. 347. Section 394 of the former is as follows:

"(1) Where neither the debtor nor the creditor seasonably exercises his power to apply a payment to one of several debts, the payment is applied to the earliest matured debt to which the creditor might have applied it, except that application is made to

"(a) a matured debt which the debtor is under a duty to a third person immediately to pay, rather than to one where he is under no such duty; or

"(b) if he is under no such duty,

"(i) to overdue interest rather than to principal; and

"(ii) to an unsecured or precarious matured debt rather than to one that is secured or certain of payment.

"(2) If the rules stated in Subsection (1) afford no ground for differentiating matured debts, a payment not applied by either debtor or creditor is applied ratably to all matured debts."

(1) and (1) (*a*) cover the instant case, and cases such as we directed attention to in Columbia Digger Co. v. Sparks et al., supra, as to earliest matured debts and third persons; but (1) and (1) (*a*) only become intelligible and consistent with (*b*) (*ii*) after definition of the Pennsylvania rule of application, as we are attempting to state it.

In 97 A. L. R. 347, and annotations, the text is as follows:

"a. Rule that payments are to be applied to unsecured items.

"In the majority of jurisdictions the rule has been recognized that, in the absence of an appropriation of payments by the parties, the court will apply them to the unsecured or least secured debts in preference to those secured or more adequately secured. This rule is designed to favor the creditor by giving him the full benefit of his security, and has been variously stated as calling for application 'to an unsecured rather than a secured item,' 'to the least secured debt,' or 'to the debt for which the security is most precarious.' The following cases support the rule indicated . . ."

Among others the cases cited are Pierce et al. v. Sweet, supra, Johnson's Appeal, supra, Foster v. McGraw, supra, and Bell v. Clark, supra, which cases, as we have pointed out, are expressly to the contrary, provided the oldest debts or items are those covered by surety.

The difficulties seem to us to have arisen from putting forward as general rules matters which are really

exceptions; by confusing sureties as third persons, when in fact they are not, but are merely substitutes for their principals; by mistaking additional security of the principal for a pure suretyship; and by failing adequately to consider Pennsylvania in the preparation of reference works. But the rule of application of payment with respect to a surety for the oldest debt or first item, as we have stated it, is amply supported in our decisions, and there is no authority in Pennsylvania to the contrary.