# Bell *v.* Clark, Appellant.

*Payment—Misappropriation of payments—Debtor and creditor.*

1. Where no appropriation of a payment is made by either party to specific claims, the law will apply the payment in the way most beneficial to the creditor; and, therefore, to the debt which is least secured, unless to the prejudice of a surety.

2. Where a payment is made less in amount than the aggregate of various claims due by the debtor to the creditor, and neither party makes an appropriation, the law will apply the payment to claims primarily due by the debtor to the creditor, and notes made by him as principal, in preference to his liability as indorser and surety on the note of a third person.

3. The maker of a promissory note purchased with another person a judgment against the indorser on the note, which judgment was held by a bank as collateral security for a number of claims against the indorser. The amount paid for the judgment was less than the aggregate of the claims of the bank. The object of the assignment was to enable the assignees to clear title to certain lands in which they were tenants in common with the indorser. It was stipulated in the assignment that if anything was realized by the sale of the lands, over the amount paid, the bank should receive it towards the liquidation of the account against the indorser, but nothing further was in fact received by the bank. It was also stipulated that the bank should continue to hold and retain any notes or other securities for which the judgment had been collateral, unaffected by the assignment. An action was brought by the bank against the maker of the note indorsed by the defendant in the judgment assigned. *Held,* that the maker could not set up as a defense that the money paid for the assignment of the judgment involved payment of the note in suit.

Argued Oct. 27, 1908. Appeal, No. 39, Oct. T., 1908, by Mary E. Clark, from judgment of C. P. McKean Co., Oct. T., 1900, No. 359, on verdict for plaintiff in case of W. W. Bell *v.* Mary E. Clark. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on a promissory note. Before BOUTON, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant presented the following point:

1. That it appearing that the payment made was not applied,

either by the debtor or creditor, the law makes application thereof in the manner most favorable to the debtor, that is to say, in relief of the source from which the payment fund arose. *Answer:* This, gentlemen, is good law in a case to which it applies, but as we view the law, it has no application to this case. No payment in this case was made by the debtor, Junius R. Clark,—the debtor in the judgment,—the payment made in this case was made by Mr. Richmond as attorney for Ellen C. Hanna and Mary E. Clark for the purpose of getting control of this judgment and having the judgment assigned to him as such attorney, hence the rule of application has no place in this case. At the time Junius R. Clark made no application of the money,—the bank simply applied to the collateral security held by them. Mary E. Clark made no application and had no right to make application to these various notes, for the very reason that her stipulation was that the notes and other securities for which the collateral judgment was given, should be held and retained by the bank unaffected by the assignment, and that assignment was delivered to her upon the payment of this $6,750, hence this point is refused. [1]

2. If the jury believe from the evidence that the agreement between the bank and Richmond was intended to be a full settlement between the bank and Mary E. Clark, then the verdict should be for the defendant. *Answer:* This point is refused. We say to you that under the evidence there was no settlement of this note in full or any other note in full held by the bank on which J. R. Clark was maker or indorser, as we view the law,— hence this point is refused.

3. That the judgment note of Junius R. Clark having been given as collateral security for the note in suit among other notes, and the bank having entered judgment upon it and made assignment thereof, if the jury believe that the credit entered upon the judgment was an application of the amount paid, then the application thus made was pro rata upon the debts secured and the verdict should be only for the balance, if any, without interest thereon. *Answer:* This point is refused. The bank, being the holder of all these notes, being the owner of the judgment given as collateral security, had the right to assign this

judgment for the consideration of $6,750, which they did assign,—had the right to make the stipulation which they did make that the notes for which the judgment was given as collateral should be retained unaffected by the assignment, and had the right to pursue any note they held until they received the full amount of the indebtedness of J. R. Clark to them. This $6,750, of course, must apply upon this collateral and was so applied upon the collateral, but it in nowise affects the right of the bank under this stipulation in the case to pursue, as we have already said, any note which they held for which the judgment was given as collateral, and could pursue them to the extent of recovering their face amount up to the time when the total amount recovered, together with the sum of $6,750—including the $6,750—was in full of J. R. Clark's debt.

If they collected more by virtue of the judgment than was actually due them, such collection would inure to the benefit of the holder of the collateral, until the holder of the collateral had been reimbursed for the amount due him. When they had fully collected all that was due them, then they could, of course, collect no more, and the holder of the collateral, if it was Mr. Richmond or anyone else, could compel the bank by a proceeding in equity, to transfer to them all of those other notes so that they might be able to pursue and recover what was due on them. In the absence of any stipulation, an assignment of the collateral would carry with it an assignment of the original evidences of indebtedness, but this stipulation, you will readily see, prevents those notes from passing to the holder of the collateral; the bank holds the notes first, to reimburse itself for all that is due it,—afterwards holds them merely in trust for the holder of the collateral: the holder of the collateral held the judgment of $10,000 first, to reimburse him to the extent of his interest and after that, in trust for the bank. When J. R. Clark, or anyone for him, has paid the full amount of his indebtedness to the bank or to the holder of the collateral, then nothing further could be recovered from him. Any equities between Mary E. Clark and J. R. Clark cannot be worked out in this case, but would be worked out in a separate and distinct suit. [3]

Plaintiff presented this point:

1. The court is respectfully asked to charge the jury that under all the evidence in this case its verdict must be for the plaintiff for the face of the note in suit, with interest from April 7, 1897.

We affirm this point; we say to you under the evidence in this case, the evidence on the part of the plaintiff being purely documentary, their case depends in no particular upon parol proof, and the defense having failed to make a defense to this action, this point is affirmed and the verdict will be for the plaintiff for the amount of this note, with interest from the time it was due to this date.

Now, gentlemen, as we have already said to you, at the time this assignment was made, under the evidence offered by the plaintiff, there was due to the bank $10,613.98. Under the evidence since that time, there has been paid some small amounts, $84.58, to the bank, perhaps some other small items, but in any event it leaves the amount due to the bank considerably more than the amount of this note and interest, so that your verdict will be for the plaintiff, for the amount of this note and interest to this date. [4]

Verdict and judgment for plaintiff for $568.75. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*R. B. Stone,* with him *Thomas B. Wilson,* for appellant.—It has been held that debtor and creditor alike must make application if at all at the time of payment: Simson v. Ingham, 2 Barn. & C. 65; Clayton's Case, 1 Merivale, 572.

One having the means of payment of a debt due himself in his hands must be considered as having made the appropriation at the first opportunity presented of making his election to do so: Ingram's Estate, 32 P. L. J. 233; Ronig v. Erdman, 5 Whart. 112.

Or at least within a reasonable time after payment: Harker v. Conrad, 12 S. & R. 301.

It is too late for either party to claim a right to make an application after the controversy has arisen: United States v. Kirkpatrick, 22 U. S. 720.

Where neither has exercised it the law nevertheless presumes, in ordinary cases, that the debtor intended to pay in a way which at the time was most to his advantage: Harker v. Conrad, 12 S. & R. 301; Pardee v. Markle, 111 Pa. 548; Moorehead v. West Branch Bank, 3 W. & S. 550.

If there is a surety upon any debt the application will first be made upon that debt for the surety's relief: Jones on Pledges and Collateral Securities, sec. 548.

Where collateral security is given to secure a note and also future advances, payment is first to be applied to the note: Jones on Pledges and Collateral Securities, sec. 548; Goddard v. Hodges, 1 C. & M. 33.

If a thing is pledged to a creditor for several debts, and the pledge when sold is not sufficient to pay all the debts, the money arising from the sale is to be applied proportionately to all the debts to extinguish the same pro tanto: Story on Bailments, sec. 312; Graeff's Appeal, 79 Pa. 146; Weisse's Estate, 36 P. L. J. 274; Ege v. Watts, 55 Pa. 321; Donley v. Hays, 17 S. & R. 400; Fourth Nat. Bank's App., 123 Pa. 473.

*W. E. Burdick,* with him *F. W. Hastings* and *D. H. Jack,* for appellee.

OPINION BY PORTER, J., February 26, 1909:

This action is brought upon a negotiable promissory note, dated January 7, 1897, made by the defendant payable to the order of Junius R. Clark, three months after date. The parties filed a stipulation in the court below agreeing that W. W. Bell, the nominal plaintiff, had taken and held the note as cashier of the First National Bank of Bradford; that the note was the property of said bank and that the case should be tried as if the action had been brought in the name of the bank "and further that upon the trial it shall be treated and considered as though the pleadings had been drawn in accordance with this stipulation."

The uncontradicted evidence established that the note was the last of a series of renewals of an original note for $500, of which the bank was a holder for value before maturity; that at

one of the renewals the defendant had paid $150 and given a new note for $350 for which amount the note was from time to time renewed. There was no evidence which tended to show that the defendant had given the note to J. R. Clark without a full consideration or that the consideration had failed. The defendant while making no attempt to deny that the note when given was a valid obligation founded upon a sufficient consideration and that the bank took the note before maturity and for full value, set up the defense that she had paid the note. The evidence produced by the defendant tended to establish a rather complicated state of facts, from which the defendant contends an implication of law would arise that the note had been paid.

The facts upon which the defendant relied, if by the jury found from the evidence, must necessarily be stated at some length. The note in question was not paid at maturity and, on September 21, 1900, this action was brought. Junius R. Clark was, when this note was discounted by the bank, and subsequently continued to be indebted to the bank in a large amount, in addition to his liability as indorser upon this note; on December 14, 1907, he executed and delivered to the bank his judgment note in the sum of $10,000 to be held by the bank as a security collateral to all the obligations upon which he was liable; the bank entered judgment against Junius R. Clark, upon this warrant of attorney, on February 23, 1898, in the sum of $10,000 with attorney's commissions. And this judgment was revived in February, 1903. After the defendant had made the note in suit litigation arose between Mary E. Clark, this defendant, Ellen C. Hanna, Junius R. Clark, E. K. Clark and Roger P. Clark, concerning certain lands situate in McKean county. Ellen C. Hanna, in February, 1898, in an equity proceeding obtained a decree against Junius R. Clark for a large amount of money and also for the partition of certain lands. There was also litigation pending in the United States courts between the same parties and E. K. Clark and after it had been pending for a number of years the parties decided to make a settlement. Ellen C. Hanna and this defendant desired to purchase the interest of E. K. Clark in certain properties and in

order to enable them to do this arranged to effect a sale of a part of the property to R. J. Hoffman, who agreed to furnish the money to enable them to carry out the transaction. The judgment of the First National Bank against Junius R. Clark was thought to be a lien upon the land and Mrs. Hanna and Miss Clark, through their attorney, entered into negotiations with the bank to obtain control of that judgment. Mary E. Clark had prior to this filed a bill in equity against the First National Bank of Bradford, in which she had attacked the validity of the judgment as a lien upon the land, and that proceeding was then pending. The representatives of the bank finally entered into an agreement with Mrs. Hanna and Miss Clark under the terms of which the bank agreed, in consideration of the sum of $6,750 to assign the judgment against Junius R. Clark to Thomas F. Richmond, as attorney for Mrs. Hanna and Miss Clark, subject to certain stipulations and conditions. The bank did, on May 13, 1903, execute a paper assigning the judgment to "Thomas F. Richmond, attorney for Ellen C. Hanna and Mary E. Clark," which paper set forth the terms and conditions upon which the assignment was made, and Mr. Richmond, as attorney for Ellen C. Hanna and Mary E. Clark, accepted the assignment in writing "upon the terms and conditions therein stated and all such terms and conditions are made a part of the contract of assignment." Among the terms and conditions upon which the judgment was assigned were the following: a certain designated tract of land was not to be sold under this judgment nor upon the decree in favor of Ellen C. Hanna, in the equity proceeding above referred to, nor upon the judgment of Mary E. Clark held by her against said Junius R. Clark. The parties also agreed that the equity proceeding of Mary E. Clark against the First National Bank should be discontinued. The following paragraph of the assignment seems, for the purposes of this case, to be most material: "It is also stipulated that any notes of other securities held by the First National Bank of Bradford to secure which the above stated judgment was given as collateral, shall be held and retained by the said bank unaffected by said assignment." The whole purpose of the parties to the assignment and the effect which they in-

tended it should have is made clear by the following paragraph: "It is further stipulated and made a part of this assignment that after the assignee shall have used said judgment for the purpose of perfecting title to certain lands bound by the lien of said judgment he, his heirs or assigns, shall, if requested so to do, reassign said judgment to the First National Bank, its successors or assigns, after crediting upon said judgment any amount which it shall be entitled to be credited with as proceeds of sale of said property." It is manifest that the only purpose and intention of the parties, in assigning the judgment, was to enable the assignees to perfect the title to certain lands; that they thought it might be necessary in order to accomplish their purpose to sell those lands upon this judgment and they agreed that in case such a sale was made the amount to which the judgment would become entitled as a lien upon the land should be credited upon the judgment. Had the lands been sold upon the judgment, the effect would have been to reduce the amount of the judgment which the bank would be entitled to have reassigned to it after the assignees had used it for the purpose of perfecting the title to the lands of which they wished to dispose. The net result of this arrangement was to give to the assignees, in consideration of the amount which they had paid to procure the assignment, the right to take as their own any amount which they might succeed in making upon the judgment out of the lands, in case they proceeded to a sale. The fact that the assignees accomplished their purpose by releasing the land from the lien of the judgment, instead of selling it thereon, was only in line with the original intention. There is not in the agreement assigning the judgment one word from which it could be inferred as a fact or implied, as matter of law, that it was the intention of the parties that the $6,750 which the assignees paid for the assignment should, as between the assignees and Junius R. Clark, the defendant in the judgment, be treated as a credit upon the judgment. There is nothing in the evidence which could justify the suggestion that the parties had any such consequence in their minds. To have reduced the judgment by the amount which the assignees paid for the assignment would have defeated the very purpose of the parties, which was to use the

judgment, in case it became necessary, to get rid of any interest which Junius R. Clark, the judgment defendant, might have in the land.

The uncontradicted evidence established that, on May 13, 1903, when Ellen C. Hanna and Mary E. Clark paid to the bank $6,750 and procured the assignment to Mr. Richmond, their attorney, of the judgment against Junius R. Clark, the indebtedness of the latter to the bank, for which he had given this judgment as a collateral security, amounted to $10,612.80. This aggregate of indebtedness was made up of the following items, notes upon which he was liable as maker, with interest thereon, $9,965.80; an overdraft made by him of $201; and the note upon which this suit is brought, upon which he was liable as indorser only, $350, with $96.00 interest thereon. The only amount received by the bank since that date was $84.58, with which payment this defendant had no connection. The amount which the bank received from Ellen C. Hanna and Mary E. Clark was nearly $4,000 less than sufficient to discharge the entire indebtedness of Junius R. Clark to the bank. There is not a scintilla of evidence from which a jury should have been permitted to find that the agreement under which the bank assigned the judgment against Clark to Richmond, as attorney for Ellen C. Hanna and Mary E. Clark, was intended to be a full settlement between the bank and Mary E. Clark and a payment of the note now in suit. The express terms of the written agreement negative any such intention, "any notes or other securities held by the First National Bank of Bradford to secure which the above stated judgment was given as collateral, shall he held and retained by the said bank unaffected by said assignment." And upon this point the oral testimony was in entire accord with the written agreement. The court very properly refused to submit this question to the jury. There was no evidence which would warrant a finding that Ellen C. Hanna and Mary E. Clark, at the time they paid the money for the judgment which they bought, made any attempt to appropriate the money, which they thus paid, to this note or any other security for which the judgment against Junius R. Clark had been held by the bank as collateral.

The learned counsel representing the appellant contends that because the evidence does not disclose that the bank had made an application of the $6,750, for which they sold the judgment, the law will, under the circumstances of this case, make application thereof to the payment of this note of Mary E. Clark. The ground upon which he founds this position is that when neither of the parties has made application, the law makes application in the manner most favorable to the debtor. The answer to this would seem to be that Mary E. Clark was not the debtor, in the judgment which she bought. There is not, so far as the principle here involved is concerned, any distinction between a judgment and any other security. Had Junius R. Clark delivered to the bank United States bonds, or the bonds of a municipal or other corporation, as collateral security for his obligations to this bank, and had Ellen C. Hanna and Mary E. Clark bought those bonds from the bank, it will scarcely be contended that Mary E. Clark would have had anything to say, in the absence of an express agreement, as to how the purchase money for those bonds should be applied by the bank. The appropriation of the fund derived from the sale of the collateral was, in the absence of an express agreement, a matter wholly between the bank and Junius R. Clark, the judgment debtor.

Junius R. Clark was the debtor of the bank, he gave the note upon which the judgment was entered as a security collateral to the other securities held by the bank. The bank undoubtedly took a risk in assigning this judgment to Ellen C. Hanna and Mary E. Clark, for had the assignees proceeded on the judgment and realized from the property of Junius R. Clark an amount in excess of $6,750 the bank might have been required to credit the amount of such excess upon the claims which it continued to hold against Junius R. Clark. When the bank assigned the judgment the consideration for that sale must, as between the bank and Junius R. Clark, be considered as having been realized from the note which he had given as a collateral security for all the claims against him. The effect of the receipt of that money by the bank was, as between the bank and Junius R. Clark, precisely the same as if the fund had been realized from the sale of property of Clark upon the judgment: that is

the same as if Clark had actually paid the money to the bank. Clark had given to the bank a collateral security and the bank had derived the fund from the sale of that security. Junius R. Clark was therefore entitled to credit for the $6,750, the moment that money was received by the bank, without regard to whether the assignees of the judgment ever realized a single dollar from the sale of his property. Had the assignees proceeded on the judgment and realized more than $6,750 another question would have arisen, as between Junius R. Clark and the bank, but this case does not present that question.

The bank was the creditor and Junius R. Clark was the debtor and the manner in which the $6,750 should be appropriated to the claims, which the former held against the latter, was a matter in which no other party had a right to interfere. They might have agreed to any application that they saw fit. Neither of them at the time made any appropriation of the payment to particular claims. Mary E. Clark was not upon the note in suit a surety of Junius R. Clark; she was the maker of the note and the principal debtor. The law would certainly raise no implication that a payment upon the indebtedness of Junius R. Clark should be applied to the extinguishment of the independent indebtedness of Mary E. Clark, she being the principal debtor and not a surety. The only party here complaining is Mary E. Clark who contends that the money should have been applied to the payment of her note, upon which Junius R. Clark was liable only as indorser. Had Junius R. Clark paid to the bank the amount of this note, he as indorser would have been entitled to the paper and, so far as the evidence in this case discloses, he could have recovered from Mary E. Clark the amount thereof. The appropriation of this payment contended for by the appellant would have been adverse both to the right of the creditor, the bank, and Junius R. Clark, the debtor. No appropriation of the payment to specific claims having been made, the law would apply it in the way most beneficial to the creditor; and, therefore, to the debt which is least secured, unless to the prejudice of a surety: Pierce v. Sweet, 33 Pa. 151; Johnson's Appeal, 37 Pa. 268; Smith v. Brooke, 49 Pa. 147; McKelvey v. Jarvis, 87 Pa. 414; Borland v. Murphy, 92 Pa. 91; Moore v.

Kiff, 78 Pa. 96; Garrett's Appeal, 100 Pa. 597. The effect of
this rule would be to appropriate the payment to the claims of
the bank against Junius R. Clark; to the notes in which he was
liable as maker and for which the bank held the obligation of
no other party as an additional security. This rule would ex-
clude from participation in the appropriation the note in ques-
tion, the independent obligation for which Mary E. Clark was
primarily liable as maker, the liability of Junius R. Clark being
that only of an indorser. These considerations, coupled with
the facts that Mary E. Clark at the time she and Ellen C. Hanna
paid the money for and accepted this assignment, took it sub-
ject to the express covenant that the bank should continue to
hold and retain any notes or other securities for which the judg-
ment had been collateral, unaffected by the assignment; that
Mary E. Clark at that time knew that this very action on the
note was pending against her; and that the assignment while
expressly covenanting as to the disposition of other litigation
between the parties made no mention of this, lead us to the
conclusion that the action of the court below in giving binding
instructions in favor of the plaintiff was free from error.

The judgment is affirmed.