## Bauer v. Hoffower

*John D. Gresimer* of *Rydesky & Gresimer*, for plaintiff.

*Edwin W. Tompkins*, for defendant.

HIPPLE, P. J., June 19, 1942.—This is an action in assumpsit in which plaintiff seeks to recover from defendant the sum of $1,081.22, with interest from March 1, 1938. The case was heard by the court sitting without a jury under the Act of April 22, 1874, P. L. 109, 12 PS §688, and from the pleadings, evidence, and admissions of counsel at the time of the hearing the court makes the following

### Findings of fact

1. Plaintiff, John Bauer, is a citizen of Cameron County, Pa., and a milk producer therein.

2. Defendant, Earl P. Hoffower, is a citizen of Emporium Borough, Cameron County, Pa., doing business as Emporium Sanitary Dairy, and is a milk dealer therein.

3. Prior to December 1, 1936, plaintiff and defendant had dealings involving the sale and purchase of milk, and on December 1, 1936, the parties mutually settled their accounts, it being ascertained that defendant was indebted at that time to plaintiff in the sum of $1,471.78.

4. From December 1, 1936, to March 1, 1938, at the instance and request of defendant, plaintiff sold quantities of milk to defendant at the price of 5½ cents per quart, amounting in the aggregate to $7,477.32. Defendant received this milk and agreed to pay plaintiff the price charged therefor.

5. The sum of $7,477.32 in addition to the balance due plaintiff as of December 1, 1936, of $1,471.78, made a total indebtedness due from defendant to plaintiff on March 1, 1938, of $8,949.10. As against this indebtedness, defendant made payments by checks and cash, and was allowed credit for groceries, etc., in the sum of $6,785.66, leaving a balance due plaintiff by defendant on March 1, 1938, of $2,162.44.

6. Of the total amount of payments made by and credits allowed to defendant, aggregating $6,785.66, plaintiff first applied said payments and credits to the balance due on December 1, 1936, amounting to $1,471.78, leaving $5,313.88 to be applied against the indebtedness of $7,477.32, representing the purchase price of milk from December 1, 1936, to March 1, 1938, leaving a balance due of $2,163.44. However, plaintiff admits the amount due to March 1, 1938, was only $2,162.44.

7. Robert A. Taylor, treasurer of Emporium Trust Company, acting by direction of the directors of the trust company, because various statements were being made concerning the financial condition of defendant,

interviewed plaintiff and defendant, and also one William Rutz, to whom defendant was likewise indebted, on or about March 10, 1938, at which time plaintiff agreed to accept 50 percent of the amount due him in full settlement thereof.

8. On March 10, 1938, a check was drawn by defendant upon Emporium Trust Company to the order of plaintiff for $1,081.22. This check contained a notation on its face as follows: "In full to March 1, 1938." Upon the back thereof the following endorsement appears:

"This endorsement constitutes a complete release by the undersigned payee of said check, for all claims, demands, accounts or otherwise, of whatsoever kind or nature, which I ever had, now have, or hereafter can, shall or may have in law or equity against E. P. Hoffower t/a Emporium Sanitary Dairy up to March 1, 1938."

This endorsement was signed by plaintiff.

9. The check was certified by the Emporium Trust Company on March 10, 1938, and delivered by defendant to plaintiff by registered mail. It was not, however, deposited or cashed by plaintiff until May 7, 1938. Plaintiff received the check in the usual course of mail after March 10, 1938.

10. During the period of dealings between the parties, the Act of January 2, 1934, P. L. 174, as reenacted by the Act of April 30, 1935, P. L. 96, and the further reënactment thereof by the Milk Control Law of April 28, 1937, P. L. 417, was in effect and both plaintiff and defendant were governed by the provisions of said acts and the orders issued by the Milk Control Commission with relation to the minimum and maximum prices for which milk was bought and sold.

11. The transactions between the parties involved in this proceeding were the only transactions between them during the period from December 1, 1936, to March 1, 1938.

12. By General Orders 28, sec. 2, No. 10; A-6, sec. 2, No. 11; A-14, sec. 2, No. 11, the Milk Control Commission established State-wide milk marketing areas, consisting of areas in the State of Pennsylvania not included in any other area, and Cameron County and Emporium Borough were included in the State-wide milk marketing areas as defined in the foregoing general orders.

13. There are 2.15 pounds in each quart of milk.

14. The Milk Control Commission fixed the minimum price per quart, for the area in which Cameron County was included, of class 1 milk of 3.5 percent butter fat content at $.051, which was the minimum price for the milk sold to defendant by plaintiff, and the minimum price per quart in said area of milk containing 4 percent butter fat content at $.054. Defendant purchased milk from December 1, 1936, to May 31, 1937, inclusive, at the price of $.055 per quart instead of the minimum price of $.051 per quart, and from June 1, 1937, to February 28, 1938, at the price of $.055 per quart instead of the minimum price of $.054 per quart.

15. On February 29, 1940, almost two years after the check of March 10, 1938, was delivered plaintiff instituted the present action for the recovery of the balance of the amount due him on March 10, 1938.

## Discussion

The questions for determination are: (1) Whether the issuance and delivery of the certified check of March 10, 1938, by defendant to plaintiff, and the endorsement and cashing thereof by plaintiff constitute payment in full of the account of $2,162.44, at the time of such issuance, delivery, endorsement, and cashing of said check upon the theory that there was an accord and satisfaction of this account; and (2) whether under the Milk Control Laws of 1934, 1935, and 1937, the acceptance, endorsement, and cashing of the check in

question by plaintiff is a valid defense in an action to recover the full price of milk upon the basis fixed and determined by the Milk Control Commission under the authority conferred upon it by these acts.

The first question was before us in the case of Rutz v. Hoffower, etc., 39 D. & C. 47, in which it was held that a check delivered by defendant to William Rutz with an endorsement thereon similar to the check here in question was an accord and satisfaction. In that proceeding, which was a case stated, there were no facts set forth showing that the parties were controlled by the Milk Control Laws, and therefore the validity of the endorsement or release on the ground that it violated the Milk Control Laws was not passed upon. If the present case were not affected by the Milk Control Laws we would be obliged to hold that the acceptance, endorsement, and cashing of the check did constitute an accord and satisfaction, but as hereinafter set forth we conclude, under the facts in this case, that it does not constitute such accord and satisfaction.

Plaintiff contends that the endorsement, which is in effect a release, is illegal and void because it violates the provisions of the Milk Control Laws, and in effect is the granting of a discount or rebate by a producer to a dealer which is specifically prohibited by the Milk Control Laws in effect during the course of the transactions in question, and therefore the release or contract was void in its inception, being against public policy.

Defendant argues that plaintiff should apply the credits of $6,785.66 to the indebtedness accruing between December 1, 1936, and March 1, 1938. By this process of reasoning there would be a balance due on the purchases between those dates of $691.66, which deducted from the amount of the check of March 10, 1938, would leave a balance of $389.56, which defendant admits would be owing by defendant to plaintiff. He further contends that excess payments above the minimum prices set by the Milk Control Commission

over the period in question are the subject of an accord and satisfaction, and therefore the check and release of March 10, 1938, is an accord and satisfaction as to such amount.

However, there was no specific agreement between the parties as to the application of the moneys paid between December 1, 1936, and March 1, 1938, and in the absence of such agreement plaintiff had the right to apply the money to the oldest debt which was the balance of $1,471.78 struck on December 1, 1936: Pardee v. Markle, 111 Pa. 548; Fischbach & Moore, Inc., v. Philadelphia National Bank, 134 Pa. Superior Ct. 84.

Since defendant paid to plaintiff between December 1, 1936, and March 1, 1938, more than was sufficient to pay the balance of $1,471.78, the indebtedness as of December 1, 1936, must be considered paid, the balance of the credits is applicable to the indebtedness incurred between those two dates, and was subject to the provisions of the Milk Control Law in force during that period of time.

It must be noted that there was no testimony as to what period of time prior to December 1, 1936, plaintiff and defendant had the dealings which resulted in the indebtedness of $1,471.78, and therefore it is not possible to determine what portion of that indebtedness, if any, was incurred prior to the effective date of the Milk Control Law of January 2, 1934, P. L. 174.

The Milk Control Law of January 2, 1934, sec. 18(e), provides that after the board shall have fixed prices to be charged or paid for milk, whether by class, grade, or use, it shall be unlawful for a milk dealer to sell or buy, or offer to sell or buy, milk at any price less or more than such price or prices as shall be applicable to the particular transactions, and no method or device shall be lawful whereby milk is bought or sold, or offered to be bought or sold, at a price less or more than such price or prices as shall be applicable to the particular transaction, whether by any discount, or rebate, or free service, or advertising allowance, etc.

The Milk Control Law of April 30, 1935, P. L. 96, re-enacted and amended the Act of 1934. Section 18(e) of the Act of 1935 was made applicable not only to a milk dealer but also to a producer, the power of the Milk Control Board to fix minimum and maximum prices was made subject to the approval of the Governor, and the Act of 1935 contains the same prohibition against the sale or purchase of milk at prices less than the minimum, whether by any discount, or rebate, or free service, etc.

Both the Acts of 1934 and 1935 were repealed by the Milk Control Law of April 28, 1937, P. L. 417, 31 PS §700j, 101, which act, however, by section 1301, provides that the prior acts are repealed except insofar as necessary to sustain or maintain the valid prosecution or enforcement of any act done, bond posted, offense committed, liability, penalty, or judgment incurred, or rule, regulation, or order issued thereunder and saved or continued by the act. It likewise provides in section 1203 that all rules, orders, etc., created or continued under the prior acts of assembly and in existence or pending prior to or upon the effective date of the Act of 1937 shall be saved and continued in every manner, and for all purposes after the effective date of the Act of 1937, and shall be continued under the provisions thereof.

Section 807 of the Act of 1937 is a substantial reenactment of section 18(e) of the Acts of 1934 and 1935, and prohibits the sale or purchase of milk at a price less than the minimum price applicable thereto, whether by any discount, premium, rebate, free service, trading stamps, advertising allowance, extension of credit, etc.

Each of the Milk Control Laws proclaims the milk industry to be affected with a public interest and states further the inability of the producer to meet the dealer on equal terms, resulting in chaos in the industry which directly affects the public generally. These acts

have been declared constitutional: Rohrer v. Milk Control Board, 322 Pa. 257.

The release evidenced by the endorsement on the check of March 10, 1938, is in effect a contract and therefore is governed by the law relating to the validity of contracts made against public policy. If this release was illegal because it was made against the public policy laid down by the Milk Control Laws it was void in its inception and would constitute no defense in the present action. It is not possible to separate the amount claimed into different amounts and by a process of arithmetic ascertain what might be applied against the amount due on the theory that the amount paid by defendant to plaintiff was in excess of the minimum and therefore was subject to an accord and satisfaction. The consideration of this release or contract is indivisible and if a part thereof is illegal it falls as a whole: Kuhn v. Buhl, 251 Pa. 348; Delafant v. Shapiro, 73 Pa. Superior Ct. 186; Shannon's Estate, 289 Pa. 280, 284.

This is not the case of a debtor milk dealer being in bankruptcy and a creditor who is a milk producer receiving his proportion of the assets of the debtor. There is no testimony to show that defendant was insolvent, or that this transaction between the parties arose other than from the fact that defendant may have been temporarily financially embarrassed. Plaintiff testified that he did not cash the check for upwards of two months, and then only because he was advised by the Milk Control Commission to do so. The question therefore is whether a voluntary settlement by a milk producer and a milk dealer, whereby an account is alleged to be paid and an accord and satisfaction reached by the payment of 50 percent of the amount due is valid, or whether it is illegal as contrary to public policy.

We are obliged to hold that the release was not an accord and satisfaction, because it was illegal and void

in its inception by reason of the fact that the settlement was made in violation of the provisions of the Milk Control Law prohibiting the payment to a milk producer by a milk dealer of less than the minimum price fixed by the Milk Control Commission.

The United States Supreme Court in the case of Radio Corporation of America v. Raytheon Manufacturing Co., 296 U. S. 459, 462, 80 L. ed. 327, held:

"A release under seal is a good defense at law, unless its effect is overcome by new matter in avoidance. This will happen, for illustration, when it is so much a part of an illegal transaction as to be void in its inception. If it is subject to that taint, a court of law is competent to put it out of the way."

Counsel has not referred us to, nor has our independent investigation discovered, any cases dealing specifically with a situation such as is here present, relating to the sale and purchase of milk under the Milk Control Laws either in Pennsylvania or in the various States of the Union, but it has been held in a number of cases that contracts contrary to a specific statutory prohibition used either as a basis of a suit, or a defense to a suit, are illegal and are not available as a defense: Dominion Trust Co. v. Ridall, 249 Pa. 122; Lyons v. Benney, 230 Pa. 117; People's Bank v. Stroud, 223 Pa. 33, 36; State Bank of Pittsburg v. Kirk, 216 Pa. 452. See also W. S. Weed & Co. v. Cuming, 12 Pa. Superior Ct. 412, and Vandegrift v. Vandegrift, 226 Pa. 254.

In a series of cases involving contracts in violation of tariffs established by the Pennsylvania Utilities Commission and the Interstate Commerce Commission, it has been held that contracts for less than the published rates are absolutely void: Central Railroad Co. of New Jersey v. Mauser, 241 Pa. 603; Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink, 250 U. S. 577, 583, 63 L. ed. 1151; holding that "Estoppel could not become the means of successfully

avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute." And in The Pennsylvania Railroad Co. v. DeMarto, 90 Pa. Superior Ct. 216, plaintiff, which by mistake had quoted certain freight charges to defendant who paid the same, was permitted to recover the difference between the amount paid and the correct amount, the court holding that (p. 220) :

"The obligation to pay is not released by equitable considerations. It arises under an inflexible rule of law. Whether the defendant would have taken the grapes if he had known that the freight was $85.65 more than he supposed, we do not know, and it may be regarded as a hardship that he is required to pay a greater amount than he anticipated, but all persons are presumed to know the law and that the mandate of the statute is not to be avoided on consideration of solicitation or ignorance."

In Pittsburg v. Goshorn, 230 Pa. 212, 227, the Supreme Court held that when a contract offends against public policy the legal results which follow are far more serious than those which attach to a contract simply ultra vires:

"What results to a contract against public policy is a total and irremediable paralysis, which leaves it absolutely without any force or effect whatever, so that it cannot, under any circumstances, be made the basis of a cause of action."

If such contract cannot be made a basis of an action it follows that it cannot be made the basis of a defense to an action. To the same effect are Waychoff et al. v. Waychoff, 309 Pa. 300, and New York & Pennsylvania Co. v. Cunard Coal Co., 286 Pa. 72.

In Leiper v. The Baltimore & Philadelphia Railroad Co. et al., 262 Pa. 329, 332, it was said that "To permit the contract made between the appellee and appellants to stand as against rates established in a legal and orderly method and in conformity with the pro-

visions of the law would be to nullify the purposes of the act."

In discussing the validity of the Milk Control Law of January 2, 1934, P. L. 174, in Rohrer v. Milk Control Board, 322 Pa. 257, in the opinion of President Judge Keller of the Superior Court, which was affirmed and adopted by the Supreme Court, Judge Keller said (p. 277) ; "I can see no real distinction in this respect between the Public Service Company Law (Act of July 26, 1913, P. L. 1374) and the Milk Control Act now under review."

One of the late cases passing upon section 18(e) of the Milk Control Law of 1934 is Zeuger Milk Co. v. Pittsburgh School District, 334 Pa. 277. Prior to the passage of the Milk Control Law the school district awarded to plaintiff a contract for the supply of milk for the year 1934 at a price agreed upon between the parties. On April 7, 1934, the Milk Control Board fixed the minimum prices to be charged to various classes of users of milk, and such prices as applicable to the transaction in question were higher than those specified in the contract. The milk company continued to supply milk to the school district billing it at the new fixed price, but the school district refused to pay more than the contract price, whereupon the milk company brought suit to recover the difference. The Supreme Court in affirming a verdict for plaintiff said (p. 279) : "Had the milk been sold for less than the fixed price the sale would have been an unlawful act." In that case the contract, even though legal prior to the passage of the Act of 1934, became subject to regulation under the police power after the passage of the act. Therefore, the release here in question must be held to be subject to regulation under the Milk Control Law, and to be a violation thereof.

In Milk Control Commission v. Paulishak, etc., et al., 40 D. & C. 563, the milk dealer in order to avoid the expense of keeping records agreed to pay the milk pro-

ducer 10 cents per can more than competing milk dealers would pay them. He, however, failed to keep proper records. The producers were satisfied that they had received a greater sum than they would have been entitled to if the records had been properly kept, and gave to the milk dealer an assignment of all their claims against him, and a receipt (or release) for everything he owed them. He was cited by the Milk Control Commission, among other things, for failure to keep proper records, and at the hearing offered the assignment and receipts in evidence before the commission, which refused to admit them. Judge Leach (Lackawanna Co.) stated (p. 565) : "No doubt the assignments and the releases would not avail defendant in a suit by the milk producers against defendant. Section 807 of the Milk Control Law of 1937, supra, provides that it shall be unlawful to sell or buy milk at any price below the minimum price or above the maximum price applicable to the particular transaction, the said price being fixed by the commission. The gist of a further provision is to the effect that no method or device which shall change the price shall be lawful. It lists numerous evasions, such as premiums, discounts, rebates, advertising, and so forth.

"Defendant contends that because this section does not particularly list the device of release and assignment the operation of such a paper is excluded. We do not approve that contention because the thing that is done when milk is sold for less than the price fixed by the commission is unlawful under our present decisions. A release or assignment cannot evade the consequences of an unlawful act."

There is no doubt but that the parties to this transaction acted in good faith. Apparently defendant was having difficulty in meeting his payments, and plaintiff was in need of money. However, this situation cannot prevent the application of the statutory provisions relating to the sale and purchase of milk at prices less

than the minimum price fixed by the Milk Control Commission. In the hands of unscrupulous persons such settlement accompanied by a release would nullify one of the purposes of the act, viz, the return to a producer of a fair amount for the milk produced by him. It can readily be seen how this might be accomplished. The milk producer could agree to sell milk to a milk dealer at a price somewhat above the minimum and after the account had run for some period then agree to accept a settlement below the minimum price in compromise of the real amount due. This would be a patent violation of the Milk Control Law, it would work to the disadvantage of other milk producers and milk dealers, and would be discriminatory as against them. The accord and satisfaction set up as a defense in this case constitutes an agreement, whether express or implied, contrary to public policy and in violation of law which, if carried out by the parties, or permitted to be the basis of a claim by one of the parties thereto, or the basis of an affirmative defense by the other, would accomplish that very thing negatively which the law has said cannot be done affirmatively. While not doubting the good faith of the parties we hold that the endorsement and release upon the check in question is not an accord and satisfaction because it was void in its inception and against public policy, being in violation of the provisions of the Milk Control Law.

The court therefore makes the following

### Conclusions of law

I. Plaintiff had the right to apply the moneys paid by defendant between December 1, 1936, and March 1, 1938, to the balance of December 1, 1936, because there was no specific agreement between the parties as to the application of the moneys.

II. The acceptance by plaintiff of the certified check of March 10, 1938, and the endorsing and cashing thereof did not constitute an accord and satisfaction

as between the parties, and defendant was not released from payment of the balance due of $1,081.22.

III. The release endorsed upon the check of March 10, 1938, and signed by plaintiff was void in its inception as an accord and satisfaction because it was in violation of the provisions of the Milk Control Laws and was contrary to public policy.

IV. Plaintiff is entitled to judgment against defendant in the sum of $1,081.22, with interest from March 1, 1938.

Therefore, the following order is entered:

### Order

And now, June 19, 1942, the Prothonotary of Cameron County is hereby directed to file and enter of record this opinion and order, to give notice thereof forthwith to the parties, or their attorneys of record, and if no exceptions are filed within 30 days after service of such notice the prothonotary is hereby directed to enter judgment in the above case in favor of plaintiff and against defendant for the sum of $1,081.22, with interest from March 1, 1938, together with costs of suit.